UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEJANDRA SOLIS,<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF BREWSTER, a municipal corporation; CHIEF OF POLICE RONALD J. OULES, in his individual capacity; OFFICER TIMOTHY RIEB, in his individual capacity,<br><br>              Defendants. | NO. CV-08-0021-EFS<br><br>**ORDER DENYING DEFENDANT CHIEF OULES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF QUALIFIED IMMUNITY** |

      A hearing was held in the above-captioned matter on April 23, 2009, on Defendant Brewster Chief of Police Ronald J. Oules' Motion for Partial Summary Judgment on the Issue of Qualified Immunity (Ct. Rec. 42). Plaintiff Alejandra Solis was represented by Janet Rice. Michael McFarland appeared on behalf of Defendants Chief Oules and Officer Timothy Rieb; Patrick Moberg appeared on behalf of the City of Brewster. Chief Oules asks the Court to grant him qualified immunity with respect to an allegedly unconstitutional traffic stop.[1] Plaintiff opposes the

---

[1] Chief Oules is not seeking qualified immunity in connection with Plaintiff's excessive force claims at this time.

ORDER ~ 1

motion, contending that a reasonable police officer in Chief Oules' position would not have believed that probable cause existed to stop Plaintiff for a driving onto private property in order to avoid a stop sign. After reviewing the submitted material and relevant authority and hearing argument, the Court is fully informed. This Order supplements and memorializes the Court's oral denial of Chief Oules' motion.

**A.   Undisputed Facts**[2]

Beginning in approximately February 2006, the Brewster Police Department received complaints of persons cutting through the Shell parking lot in order to avoid the stop sign at the intersection of State Route (SR) 97 and Bridge Street. After receiving these complaints, Chief Oules called the Washington State Patrol, which he considered to be the state's premier traffic enforcement agency, to inquire how the WSP handles persons cutting through parking lots to avoid traffic signals. Based on this conversation, Chief Oules understood that the WSP had been having that problem at another SR 17 intersection and that it was WSP's practice to stop persons cutting through the parking lot based upon the person having driven around, and thus avoided, the traffic control device.

At approximately 12:30 p.m. on August 1, 2006, Chief Oules observed a green van proceeding northbound on Bridge Street approaching the intersection. At the time, there were two (2) cars already stopped at the intersection waiting to turn right (northbound) on SR 97. As the

---

[2] For purposes of this motion, the parties agree to the following material facts.

ORDER ~ 2

green van approached the intersection, it turned left off of Bridge Street and into the Shell parking lot, where a fruit stand was located. Earlier in the day, Ms. Solis had talked with her employer Betty McKee, who asked her to pick up some peaches for Ms. McKee on her way to work.[3] At the other side of the Shell parking lot, the green van turned right onto Highway 97.  Shortly after the green van turned onto Highway 97, Chief Oules stopped the van.  Upon stopping the van, he contacted the driver and identified her as Alejandra Solis - the Plaintiff.  What transpired following during the traffic stop is disputed, but such events are immaterial to the instant motion.

Chief Oules completed an Incident Report and Narrative detailing the events that occurred during his stop of Ms. Solis.  He forwarded this report to the Okanogan County Prosecutor's Office for review.  Although he initially completed a citation to Ms. Solis for driving with a suspended license and not having insurance, Chief Oules voided the citation prior to sending the case over to the Prosecutor's Office for review.

Okanogan County Prosecutor Karl Sloan reviewed this report and another police officer report in order to determine whether charges should be filed against Ms. Solis.  After reviewing the police reports, he believed there was probable cause to charge Ms. Solis with Assault in

---

[3] For purposes of this motion, the parties agree that it is immaterial whether Ms. Solis stopped her vehicle in front of the fruit stand.

ORDER ~ 3

1  the Third Degree (RCW 9A.36.031(1)(g)), Resisting Arrest (RCW 9A.76.040),
2  and Driving While License Suspended or Revoked in the Third Degree (RCW
3  46.20.342(1)(c)).  Based upon Prosecutor Sloan's probable cause, he filed
4  an Information and Declaration for Criminal Summons.  Thereafter,
5  Okanogan County Superior Court Judge Jack Burchard entered an Order for
6  Issuance of Criminal Summons based upon Prosecutor Sloan's probable cause
7  determination and the filed Information and Declaration for Criminal
8  Summons.
9      On September 21, 2006, the Okanogan County Superior Court issued an
10 Order Finding Probable Cause, noting that there was "probable cause to
11 believe defendant committed the above offenses" of third degree assault,
12 resisting arrest, and driving with a suspended license.  Ms. Solis was
13 charged with the three (3) above-referenced crimes, and the case
14 proceeded in Okanogan County Superior Court.  On or about March 21,
15 2007, Ms. Solis filed a Motion to Dismiss for Lack of Probable Cause,
16 arguing that Chief Oules did not have reasonable suspicion to stop Ms.
17 Solis's vehicle, as "there is no statute that makes it unlawful to cut
18 through a parking lot."  Prosecutor Sloan opposed the motion, believing
19 (and still believing) that Chief Oules had probable cause to stop Ms.
20 Solis' vehicle.  In the State's opposition to Ms. Solis' motion, the
21 State argued that Chief Oules had reasonable suspicion to stop Ms. Solis'
22 vehicle because the following statutes made it illegal for a person to
23 cut through a parking lot for the purpose of avoiding a traffic signal:
24 RCW 46.61.050 (obedience to and required traffic control devices), RCW
25 46.61.195 (arterial highways designated), RCW 46.61.205 (vehicle entering
26

ORDER ~ 4

highway from private road or driveway), and RCW 46.61.365 (emerging from alley, driveway, or building).

Judge Burchard disagreed with the State's position that it was illegal for a person to cut through a parking lot in order to avoid a traffic signal and dismissed the Resisting Arrest and Driving While License Suspended or Revoked in the Third Degree charges. The Assault in the Third Degree charge proceeded to trial. During the criminal trial, Judge Buchard repeated that he was surprised to learn, after researching the legal issue, that it was not illegal under Washington traffic laws to cut through public property to avoid a stop sign.

Ms. Solis filed this action on January 17, 2008, asserting violations of her civil rights under 42 U.S.C. § 1983 and state law claims based in part on Chief Oules' unlawful seizure of her vehicle, arrest, and excessive force. Through the instant motion, Chief Oules seeks dismissal of the § 1983 unlawful seizure claim because he is entitled to qualified immunity.

**B.  Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should

grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

C.  **Applicable Authority and Analysis**

Qualified immunity shields government officials performing discretionary functions from civil liability if their actions were objectively reasonable in light of clearly established law at the time they acted. *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). The doctrine balances two (2) goals: 1) allowing a citizen to recover damages when her constitutional right(s) are violated and 2) ensuring that officials are

ORDER ~ 6

able to exercise their position's discretion. *Harlow v. Fitzgerald*, 457 U.S. 800, 813-14 (1982).

The court must engage in a two-pronged inquiry to determine whether a public official enjoys qualified immunity; however, the court, in its sound discretion, may begin its analysis with either prong. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (modifying *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  The two-pronged inquiry involves: 1) determining, while examining the facts in the light most favorable to the injured party, whether the official's alleged conduct violated a constitutional right, and 2) deciding whether the constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201.  If the official's alleged conduct violated a clearly established constitutional right of which a reasonable official should have known, he is not entitled to qualified immunity. *Id.* at 202.

**1.   Do the alleged facts show that Chief Oules' conduct violated a constitutional right?[4]**

Chief Oules contends that stopping Plaintiff's vehicle did not violate a constitutional right because he had the authority under Washington law, in particular RCW 46.61.050 and 46.61.140, to stop a vehicle cutting through private property to bypass a traffic control device.  Assuming that Plaintiff did not stop at the fruit stand, Plaintiff contends Chief Oules violated Plaintiff's constitutional right

---

[4] Because the question of whether Chief Oules' conduct violated a constitutional right can be easily answered, the Court analyzes this prong first.

ORDER ~ 7

because neither Washington statutes nor Brewster ordinances prohibit an individual from driving onto private property to bypass a traffic control device. For the reasons given below, the Court agrees with Plaintiff.

The parties did not clearly identify the constitutional right at issue. Yet, it appears undisputed that the constitutional right at issue is Plaintiff's Fourth Amendment right to be free from unreasonable seizure. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). A traffic stop is reasonable if it is supported by either probable cause or reasonable suspicion. *Id.* at 1105; *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000). The parties focus on whether Chief Oules had probable cause to stop Plaintiff. However, Chief Oules did not need to have probable cause to believe a traffic infraction had occurred; rather, he simply needed reasonable suspicion[5] to believe that a traffic infraction occurred in order to stop Plaintiff's vehicle. *See United States v. Choudhry*, 461 F.3d 1097 (9th Cir. 2006); *Lopez-Soto*, 205 F.3d at 1105. Nonetheless, it is practically unimportant which standard applies because the focus is on whether driving through a parking lot to bypass a traffic control device on the public roadway constitutes a traffic infraction under Washington law. After reviewing the statutes relied upon by Chief Oules, the Court finds such conduct in Brewster does not constitute a traffic infraction.

---

[5] Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *Lopez-Soto*, 205 F.3d at 1105.

ORDER ~ 8

It is undisputed that Brewster does not have a "cutting corners" or "avoidance of intersection" ordinance, unlike some other Washington cities. Chief Oules relies upon Washington statutes, in particular RCW 46.61.050 and 46.61.140, to argue that reasonable suspicion existed to believe that Plaintiff violated Washington state traffic laws by bypassing the stop sign by turning left into the gas station parking lot and then turning right onto SR 17. RCW 46.61.050(1) states:

> The driver of any vehicle, every bicyclist, and every pedestrian shall obey the instructions *of any official traffic control device applicable thereto* placed in accordance with the provisions of this chapter, unless otherwise directed by a traffic or police officer, subject to the exception granted the driver of an authorized emergency vehicle in this chapter.

(Emphasis added.) Chief Oules relies upon the emphasized language to argue that this statute prohibits driving onto private property to bypass a traffic control device on the public road. The Court finds such an interpretation is nonsensical. The statute's plain language does not prohibit "cutting corners" to avoid a stop sign on the public road.[6] If the driver turns into private property, the traffic control device on the public road is no longer applicable.

RCW 46.61.140 also does not prohibit cutting corners to avoid a stop sign on the public road:

---

[6] "The 'plain meaning' of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Washington v. Jacobs*, 154 Wn.2d 596, 600 (2005).

ORDER ~ 9

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
>
> (2) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic-control devices.
>
> (3) Official traffic-control devices may be erected directing slow moving or other specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of every such device.
>
> (4) Official traffic-control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device.

This statute directs drivers to maintain a right lane position and to stay in that lane absent passing or turning. It does not prohibit a driver from turning left onto private property to bypass a stop sign on the public road.

Accordingly, after reviewing the cited Washington statutes, the Court finds that Washington law does not prohibit a driver in Brewster from turning onto private property to bypass a traffic control device on the public road. Therefore, reasonable suspicion did not exist to believe that Plaintiff's driving constituted a Washington traffic infraction.

ORDER ~ 10

### 2. Was the right clearly established in light of the specific context of the case?

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry has two parts: 1) was the right clearly established and 2) whether a reasonable officer would understand that particular conduct was unlawful. *Id.*

As to the first part, the Court finds an individual's Fourth Amendment right to be free from unreasonable seizure was clearly established in August 2006. *See Lopez-Soto*, 205 F.3d at 1105. The second inquiry is disputed.

The second inquiry is indisputably an objective inquiry. *See Pearson*, 129 S. Ct. at 822. Chief Oules claims that his belief was objectively reasonable because 1) a reasonable interpretation of the cited Washington statutes support this belief, 2) no Washington case holds that RCW 46.61.050 does not apply to persons cutting through parking lots to avoid traffic control devices, 3) it was based in part upon information given to him by the WSP, 4) Prosecutor Sloan believes Chief Oules had reasonable suspicion to stop Plaintiff's vehicle, 5) Judge Burchard thought it was illegal for a person to cut though a parking lot to avoid a traffic control device, and 6) a number of Washington municipalities prohibit by code or ordinance cutting through a parking lot to avoid a traffic control device.[7]

---

[7] In reply, Chief Oules contends that the doctrine of collateral

ORDER ~ 11

Again, because the reasonableness of Chief Oules' stopping of Plaintiff's vehicle is an objective inquiry, Chief Oules' subjective belief that Plaintiff violated Washington traffic law, as well as whether he has cited others for violating RCW 46.61.050 for cutting corners, is immaterial. Rather, the critical question is whether a reasonable officer would have thought that reasonable suspicion existed to believe that Plaintiff committed a traffic infraction and could be stopped.

Chief Oules made a mistake of law, i.e., he mistakenly believed that Washington statutes prohibited "cutting corners." Qualified immunity protects both reasonable mistakes of law or fact. *See Butz v. Economou*, 438 U.S. 478 (1978); *Benson v. Hightower*, 633 F.2d 869 (9th Cir. 1980). The Seventh Circuit has addressed mistaken interpretations of statutes in the context of qualified immunity analysis. In *Mustafa v. City of Chicago*, 442 F.3d 544, 549 (7th Cir. 2006), the Seventh Circuit stated:

> But where the law is open to interpretation, qualified immunity protects police officers who reasonably interpret an unclear statute. Reviewing courts must ask "whether X is a crime under the statute that the police arrested the plaintiff for violating. If the answer to that question was unclear when the arrest was made, the police are entitled to their immunity."

*Id.* at 549 (quoting *Northen v. City of Chicago*, 126 F.3d 1024 (7th Cir. 1997)).

///

---

estoppel may preclude Plaintiff from arguing that Chief Oules was acting in anything other than good faith. *See Hanson v. City of Snohomish*, 121 Wn. 2d 552, 561 (1993). Because it is immaterial whether Chief Oules was acting in good faith, the Court need not address collateral estoppel.

ORDER ~ 12

In the earlier *Northen* decision, the Seventh Circuit determined that the officer's interpretation of a previously-uninterpreted statute was unreasonable, stating:

> The fact that a statute has not been construed does not mean that there is no law, that anything goes. There is always the statute itself, and if its meaning is clear without benefit of judicial interpretation the officials enforcing it cannot reasonably go against it.

*Id.* at 1028 (citing *Andreu v. Sapp*, 919 F.2d 637, 643 n.6. (11th Cir. 1990)).

Here, as set forth above, the Court finds that the plain language of RCW 46.61.050 and 46.61.140 do not expressly or implicitly prohibit a driver from driving into a gas station to bypass a stop sign. These statutes are so obviously inapplicable that judicial interpretation is unnecessary for a reasonable official to know that reasonable suspicion did not exist to cite Plaintiff for such conduct. The conclusion that these statutes do not prohibit "cutting corners" is bolstered by the clear language of the city ordinances and codes that do prohibit such. *See, e.g.*, Shoreline Municipal Code § 10.08.010 ("No driver of a motor vehicle shall seek to avoid stopping for stop signs, stop lights, yield signs or any other sign or device used to control traffic by detouring from a public right-of-way through private property to reach another public right-of-way."); *see also* Seatac Municipal Code § 9.15.010; Clyde Hill Municipal Code § 10.40.010; *and* Cashmere Municipal Code § 10.76.020.

Chief Oules also relies upon the legal principal that police officers must be given some allowance because they are forced to make split-second judgments. This principal, however, was been applied in the context of excessive force claims. *See Drummond v. City of Anaheim*, 343

ORDER ~ 13

F.3d 1052, 1058 (9th Cir. 2003). Furthermore, this was not the sort of split-second decision that necessitates an allowance for split-second decision making, especially given that Chief Oules had previously pulled over a number of individuals for the same conduct - bypassing a traffic control device by driving onto private property.

**D.   Conclusion**

The Court denies Chief Oules' motion because as of August 1, 2006, the Fourth Amendment clearly established that reasonable suspicion was needed to stop an individual for a traffic infraction and the language of the cited Washington statutes placed a reasonable officer on fair notice that these statutes did not prohibit "cutting corners." *See Drummond*, 343 F.3d at 1060-61 ("[I]t is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness was apparent in light of existing law.")

For the reasons given above, **IT IS HEREBY ORDERED:** Defendant Oules' Motion for Partial Summary Judgment on the Issue of Qualified Immunity **(Ct. Rec. 42)** is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this ___24th___ day of April 2009.

> S/ Edward F. Shea
> EDWARD F. SHEA
> United States District Judge

Q:\Civil\2008\0021.msj.oules.qi.wpd

ORDER ~ 14