UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALEJANDRA SOLIS,

                    Plaintiff,                    NO. CV-08-0021-EFS

          v.

CITY OF BREWSTER, a municipal          **ORDER RULING ON MOTIONS HEARD**
corporation; CHIEF OF POLICE           **ON FEBRUARY 16, 2011**
RONALD J. OULES, in his
individual capacity; OFFICER
TIMOTHY RIEB, in his
individual capacity,

                    Defendants.

     A hearing occurred in the above-captioned matter on February 16,

2011, in Spokane.  Plaintiff Alejandra Solis was represented by Janet

Rice and Maria Gonzalez.  Jerry Moberg appeared on Defendant City of

Brewster's ("City") behalf.  Michael McFarland, Jr. appeared on Defendant

Ronald Oules and Timothy Rieb's behalf.  Before the Court were the City's

Motion for Summary Judgment (ECF No. 141), Defendants Chief Oules and

Officer Riebs' Motion for Partial Summary Judgment Re: Plaintiff's Fourth

Cause of Action (ECF No. 146), Plaintiff's Motion for Partial Summary

Judgment on Malicious Prosecution Claim (ECF No. 149), Plaintiff's Motion

for Partial Summary Judgment Against the City of Brewster: Lack of

Probable Cause (ECF No. 153), and Defendants Chief Oules and Officer

ORDER ~ 1

Riebs' Motion to Strike (ECF No. 171).  After reviewing the submitted material and relevant authority and hearing from counsel, the Court was fully informed.  This Order supplements and memorializes the Court's oral rulings.  For the reasons given below, the Court denies Defendants' motion to strike, denies Plaintiff's probable-cause related summary-judgment motion, grants Defendants' summary-judgment motion relating to the fourth cause of action, and grants and denies in part the other two summary-judgment motions.

**A.   Factual Background[1]**

     1.   <u>Defendants Chief Oules and Officer Rieb's Motion to Strike</u>

     Before setting forth the facts, the Court addresses Defendants Chief Oules and Officer Rieb's request that the Court strike Ernest Burwell's expert opinion that, given Chief Oules' training and experience, it was

_____

     [1]  When considering the summary judgment motions and creating this factual section, the Court did not weigh the evidence or assess credibility; instead, the Court believed the undisputed facts and the opposing party's evidence and drew all justifiable inferences therefrom in its favor.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  However, the Court did not accept as true assertions made by the opposing party if they were flatly contradicted by the record.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  Disputed facts are supported by a citation to the record, while undisputed facts (ECF Nos. 178, 179, 180, & 181) are not.

ORDER ~ 2

more than likely that he observed Ms. Solis' race before initiating the traffic stop.  Plaintiff opposes the motion.

An expert may testify "in the form of an opinion or otherwise" if his "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702.  However, the expert must base his opinions on a factual basis.  *Id.; Major Leave Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

Mr. Burwell has thirty years of law enforcement experience in both urban and rural communities.  He is familiar with the training that law enforcement officers receive relating to traffic stops and making observations of the surroundings and transpiring events.  His opinion that Chief Oules, given his training, experience, and vantage point across the street from the Shell gas station parking lot, more than likely observed Ms. Solis' race before initiating the traffic stop is based upon Mr. Burwell's own experience and review of Chief Oules' Report, criminal pretrial and trial testimony, and civil deposition testimony.  Mr. Burwell's opinion on this point is reliable given his training and experience relating to similar traffic stops and his review of the case's facts on this point, and it will assist the jury.  *See United States v. Webb*, 115 F.3d 711, 712 (9th Cir. 1997) (allowing police expert to opine as to why an individual would conceal a weapon in a vehicle's engine compartment).  Accordingly, Defendants' motion to strike is **denied.**

2.  <u>Events relating to Ms. Solis</u>

On August 1, 2006, Ms. Solis' employer, Betty McKee, asked her to pick up peaches on her way to work.  Unfortunately, until arriving at the

fruit stand, Ms. Solis did not know that the fruit stand located in the Shell gas station parking lot was closed.

Meanwhile, Chief Oules was parked nearby watching the intersection adjacent to the Shell gas station parking lot ("the subject intersection") for drivers bypassing the stop sign at the intersection by cutting through the parking lot.  Although the City did not have an ordinance making it unlawful to cut through a private parking lot to avoid a traffic signal, the police department had received complaints of persons cutting through the Shell gas station parking lot from residents, including the Shell gas station owner, who is Chief Oules' father-in-law.

At approximately 12:30 p.m., Chief Oules observed Ms. Solis' green van[2] approach and turn into the Shell gas station parking lot.  As Ms. Solis approached the subject intersection,[3] she turned into the Shell gas station parking lot.  Chief Oules testified that he did not observe Ms. Solis stop at the fruit stand, while Ms. Solis testified that she momentarily stopped at the fruit stand.  The parties agree that at the other side of the Shell gas station parking lot, Ms. Solis approached the fog line, stopped at the fog line, and then turned right onto the highway.  Shortly after she turned onto the highway, Chief Oules

---

[2]  Chief Oules contends that he did not know Ms. Solis nor recognize the van has a vehicle that she drives.  Plaintiff's expert Mr. Burwell opines, however, that Chief Oules, based on his training and experience, more than likely observed Ms. Solis' race.

[3]  When Ms. Solis turned into the parking lot, there were two vehicles at the stop sign.

initiated a traffic stop.  Ms. Solis stopped.  Upon Chief Oules' contact, she identified herself.  What transpired during the remainder of the traffic stop is disputed: Ms. Solis contends that Chief Oules, along with Officer Rieb who arrived, used excessive force to arrest her, while Defendants contend that the amount of force used was appropriate.

Following the traffic stop, Chief Oules completed a three-page Incident Report and Narrative ("Report"), dated August 2, 2006, detailing the traffic stop and arrest, in which he stated that Ms. Solis "slugged me in the stomach," "continued to strike at my head and face," and scratched the inside of his right arm.  On August 8, 2006, he forwarded this report, which requested "review of this case" and for charges to be "filed against . . . [Ms. Solis] for Assault 3rd on a police officer" to the Okanogan County Prosecutor's Office.[4]  Although he had also initially cited Ms. Solis for driving with a suspended license and not having insurance, Chief Oules voided the lack-of-insurance citation before sending his Report to the Prosecutor's Office.

Okanogan County Prosecutor Karl Sloan reviewed the Report for potential criminal charges.  By August 14, 2006, Mr. Sloan had made the decision to criminally charge Ms. Solis based solely on Chief Oules' Report; he did not conduct an investigation to corroborate Chief Oules'

---

[4]  Because Ms. Solis was released to receive medical care, Chief Oules was required to submit his report to the Prosecutor's Office in order to initiate criminal charges against Ms. Solis.  Also, the Prosecutor's Office had a general directive that cases involving both misdemeanors and felonies be forwarded to them for review.

report. Prosecutor Sloan filed an Information and Declaration for Criminal Summons in which he attached Chief Oules' report as the basis for establishing probable cause for the crimes of driving while license suspended (RCW 46.20.342(1)(c)), resisting arrest (RCW 9A.76.040), and third-degree assault (RCW 9A.36.031(1)(g)). Thereafter, on September 21, 2006, Okanogan County Superior Court issued an Order for Issuance of Criminal Summons for the three offenses. The criminal case proceeded in Okanogan County Superior Court.

On November 20, 2006, Officer Rieb filed his report regarding the August 1, 2006 incident with the Okanogan County Prosecutor's Office. Prosecutor Sloan reviewed Officer Rieb's report. Also, in January 2007, Prosecutor Sloan reviewed reports from two witnesses — Ms. McKee and Ms. Donna Brown. Ms. McKee, Ms. Solis' employer and who Ms. Solis called on her cell phone immediately after being stopped, advised that she heard a male yell, "[y]ou can't talk on the phone," immediately before the call ended. (ECF No. 28-3, Ex. 6, p. 125.) Ms. Brown, who had been driving near the traffic stop, relayed that she could hear Ms. Solis scream and observed Officer Oules throw Ms. Solis to the ground, move his hand twice near her head, which was located on the gravel, and then handcuff her—all without any resistance by Ms. Solis. (ECF No. 28-2, Ex. 3, pp. 107-110.) Accordingly, both of these witnesses support Ms. Solis' version of the traffic stop. Yet, in January 2007, Prosecutor Sloan also received a written statement from Mr. Goodell, who reported that Ms. Solis tried to hit Chief Oules. After reviewing all of the information, Prosecutor Sloan continued with the criminal prosecution.

ORDER ~ 6

On March 27, 2007, the Okanogan County Superior Court heard Ms. Solis' motion to dismiss, which argued that Chief Oules did not have reasonable suspicion to stop Ms. Solis' vehicle because there is no relevant law prohibiting "corner cutting." The Okanogan County Superior Court agreed that the traffic stop was impermissible and therefore dismissed the misdemeanor charges of resisting arrest and driving with a suspended license. Yet, the court maintained the charge of third-degree assault; and trial was set for May 2007.

At trial, Ms. Solis maintained that she did not intentionally assault Chief Oules. Officer Rieb testified that Ms. Solis was "flailing." At the end of a four-day trial, the jury found Ms. Solis not guilty of assault in the third degree.

3.    Other Police Conduct

In 2004, an outside assessment of the Brewster police department was conducted at the request of the former Chief of Police. The final report concluded:

> some community members reported a lack of respect for both the current sergeant and most senior officer, citing reports of racially insensitive and sexist statements and actions attributed to them. Brewster is a small community and such perceptions, whether justified or not, seriously impair their effectiveness in the community. We would not report this finding had this not been a consistent theme in interviews with a diverse group of citizens and officers. These thoughts were reported by Anglo as well as Hispanic citizens.

(ECF No. 142 at 15 & 41.)

In this lawsuit, Defendants produced copies of "all citations including all voided citations issued or written from January 1, 2005 to April 20, 2006, regarding any incident at the intersection of Highway 97 and Bridge Street (or Bridge Street N), including the parking lot of the

Shell station/food mart."  Of the citations produced, sixteen citations were issued to a driver after he or she drove through the parking lot of the Shell gas station.

In addition, the disclosed evidence showed that Chief Oules stopped a white male for speeding on October 23, 2006.  The driver's license had been expired for over a year, and the driver possessed no proof of insurance.  Chief Oules cited the driver for driving with no valid operator's license (RCW 46.20.015) and warned him about speeding and having no insurance.  Chief Oules then gave the driver a ride and did not impound the vehicle.

On August 29, 2006, Chief Oules was again watching for corner cutting at the subject intersection when he observed a white female motorist run the stop sign.  Chief Oules initiated a traffic stop, cited the driver for failing to wear a seat belt, and warned her about failing to stop at the stop sign.

**B.   Summary Judgment Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Celotex Corp.*, 477 U.S. at 322.

ORDER ~ 8

**C.   Summary Judgment Motions Relating to Municipal Liability**

Both parties ask the Court to rule in their favor on issues relating to Plaintiff's § 1983 claims asserting municipal liability.  Plaintiff asks the Court to enter summary judgment in her favor because the City had a municipal policy or custom that deprived her of the Fourth Amendment right to a probable-cause-supported seizure.  The City opposes Plaintiff's motion and also asks the Court to grant summary judgment in its favor on all of Plaintiff's federal claims and to remand the state-law claims.  Plaintiff agrees to dismissal of 1) the punitive-damages claim against the City, and 2) any claims based on alleged inadequate investigation of citizen complaints or routine deviation from the use-of-force policy; accordingly, the City's motion is **granted in part**.  However, Plaintiff opposes the remainder of the City's motion.

1.   Section 1983 municipal-liability standards

Section 1983 imposes liability against "persons," including a municipality, acting under color of state law who violate a right guaranteed by the U.S. Constitution or federal statutes.  42 U.S.C. § 1983[5]; *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  A

---

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ORDER ~ 9

municipality, however, is not vicariously liable for the unconstitutional acts of its employees under the principle of *respondeat superior*. *Id.*; *Collins v. City of San Diego*, 841 F.2d 337, 340 (1988). Rather, a municipality is only liable under § 1983 if it has a "municipal policy" that is "deliberately indifferent" to a plaintiff's constitutional right and was the "moving force" behind the deprivation of the plaintiff's constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 389-92 (adopting deliberate-indifference standard); *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). A plaintiff establishes a "municipal policy" by showing: "(1) an employee act[ed] pursuant to an expressly adopted official policy; (2) an employee act[ed] pursuant to a longstanding practice or custom; or (3) an employee act[ed] as a 'final policymaker'" with respect to the action ordered. *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010). Here, Plaintiff relies on the latter two bases.[6]

    2.   <u>Second basis: longstanding practice or custom</u>

    To satisfy the second municipal-policy basis, a plaintiff must demonstrate a "persistent and widespread practice," *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded," *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir.

---

      [6]   To the extent that the City seeks dismissal of any alleged assertion of an express policy—the first municipal-policy base—the City's motion is **granted** because Plaintiff is not proceeding under this basis.

2002).  Proof of a single incident or unconstitutional action by a non-policymaking employee is insufficient.  *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).  The plaintiff must show that the improper conduct was "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Plaintiff maintains that the City is liable for violating Ms. Solis' 1) Fourth Amendment probable-cause-supported seizure right because the City had a longstanding practice and procedure to stop people from cutting corners when such behavior is not unlawful, and 2) Fourteenth Amendment equal-protection right because the City had a practice of racially profiling Latinos.

The Court determines that triable issues of fact exist as to whether the City had a "persistent and widespread practice" of stopping people for cutting corners.  Not only did Chief Oules not reprimand subordinate officers for unlawfully stopping drivers for cutting corners, but he also engaged in such behavior.  *See McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after [constitutional violations occurred], . . . officials took no steps to reprimand or discharge the[ir] subordinates], or if they otherwise failed to admit the [subordinates'] conduct was in error.").  The jury should consider the number of times that Chief Oules and other Brewster police officers stopped individuals for cutting corners, including the sixteen issued citations, as well as Chief Oules' conversation with a state police officer about stopping drivers for cutting corners.  *Cf. Hocking v. City*

*of Roseville*, Civ. S-06-0316 RRB EFB, 2008 WL 1808250 (E.D. Cal. Apr. 22, 2008) (granting summary judgment in the city's favor because the plaintiffs failed to present any evidence supporting the assertion that the city had a custom of inadequately investigating citizen complaints against police officers).  Accordingly, both motions are **denied in part**.

However, as is also explained below in connection with the other Defendants' motion for summary judgment on the § 1983 equal-protection claim, the Court grants the City's motion in regards to Plaintiff's claim that the City had a longstanding custom or practice of discriminatory treatment against Latinos.  The statistics relied upon by Plaintiff are insufficient to create a triable issue of fact as to whether the City's police officers discriminated against Latinos.  Accordingly, the City's motion is **granted in part**.

### 3.   Third basis: Final Policymaking Authority

Plaintiff seeks summary judgment on the issue of whether the City is liable for violating Ms. Solis' Fourth Amendment right to a probable-cause-supported seizure because Chief Oules is a decision-making official who committed the violation.  In turn, the City seeks summary judgment in its favor on all § 1983 claims that assert municipal liability on the grounds of "final policymaker authority" because Chief Oules was not acting as a final policymaker when he stopped Plaintiff, used force to arrest Plaintiff, and trained officers.

The third municipal-policy basis is satisfied if a municipal employee possesses final authority to establish municipal policy with respect to the challenged action.  *Thompson v. City of L.A.*, 885 F.2d 1439, 1443 (9th Cir. 1989) (quoting *Pembaur v. City of Cincinatti*, 475

U.S. 469, 481 (1986)).  The employee can be granted this authority by 1) legislative enactment or 2) the official who possesses such authority. *Id.* at 1443.  The Court determines whether an official had final policy-making authority based on state law, including relevant statutes, ordinances, regulations, city charters, and other enactments. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781 (1997); *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Brewster is a noncharter city governed by a mayor and city council. RCW 35A.12.100 & 35A.11.020; Brewster Municipal Code § 1.10.010.  As such, the city council "may adopt and enforce ordinances of all kinds relating to and regulating its local or municipal affairs."  RCW 35A.11.020.  Its power to adopt regulations and ordinances is limited to regulations that are not in conflict with general state laws.  Const. Art. 11, § 11; RCW 47.24.020.

Under the City's municipal code, the chief of police ("Chief") is appointed by the mayor and subject to confirmation by the city council, and his employment is terminable at will.  Brewster Mun. Code § 2.42.040. The City's municipal code delegates the following duties to the Chief:

- "responsibility of the supervision of all personnel and property assigned to the police department";
- "make such rules and regulations as are consistent with the laws of the state of Washington and city ordinances as are necessary for supervising said department";
- "attend the meetings of the city council";
- "perform such other duties as authorized by law or as directed by the mayor."

Brewster Municipal Code § 2.42.040.

The Brewster police manual states that the Chief is the "chief executive officer for the Brewster Police Department, subordinate only

to the Mayor." (ECF No. 144 at 21.)  Further, it states that the Chief is "responsible for the management, direction and control of the operations and administration of the Brewster Police Department, Brewster Municipal Code, and Brewster Civil Services Rules and Regulations, RCW 35A.12.020, and State Constitutional Article XI Section II." *Id.*  The police manual also sets forth a code of ethics and specific policies relating to an officer's use of force, use of a taser, and reporting uses of force.  (ECF No. 155, pp. 9-20.)

Clearly, Chief Oules was given broad responsibilities to ensure that state and municipal laws were abided.  Yet, the Court determines that Chief Oules was not delegated the duty to establish whether cutting corners was a traffic offense.  It was the State's or the Brewster City Council's choice to determine whether to enact a law prohibiting such conduct, and at the time neither had elected to do so.  Therefore, Chief Oules' decision to stop drivers for cutting corners and to allow other officers to do the same does not bind the City.  The Court acknowledges that a "chief of police under some circumstances may be considered the person possessing final policy-making authority," *Trevino*, 99 F.3d at 920, and the Court finds Chief Oules does have final policy-making authority for certain duties.  Taking care not to confuse the Chief's nonbinding discretion to act with binding policymaking authority, the Court determines Chief Oules was simply not delegated the responsibility to establish traffic laws and therefore he was not acting as the City's final policymaker when he stopped drivers, including Ms. Solis, for cutting corners.  *See Copeland v. Locke*, 613 F.3d 875 (8th Cir. 2010) (chief of police was not final policymaker for the city's police

department regarding amount of force to use to effectuate an arrest); *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (ruling that chief of police, who did set policy for the police department, was not exercising policymaking authority when he investigated an individual case pursuant to the established policy); *Wheeler v. City of Macon*, 52 F. Supp. 2d 1372, 1380 (M.D. Ga. 1999) (granting municipality summary judgment because 1) the Fourth Amendment prescribes the standards for lawful arrests and 2) the mayor and city council, not the chief of police, was vested with the authority to establish policy for arresting or investigating officers thought to be involved in illegal conduct). Accordingly, Plaintiff's motion is **denied in part**, and the City's motion is **granted in part**.

Further, the Court finds that Chief Oules did not have final policy-making authority with regards to determining whether police conduct constituted race discrimination.  There is no evidence that Chief Oules was responsible for identifying or investigating race discrimination by his subordinates.  Accordingly, the City is **granted** summary judgment on Plaintiff's claim that Chief Oules' alleged discriminatory treatment against Latinos bound the City under this final municipal-liability basis.

On the other hand, the Court determines that Chief Oules was the final policymaker in regards to police-officer training.  Therefore, Chief Oules' failure to train Brewster officers that stopping drivers for cutting corners was unlawful binds the City. *See Davis v. Mason Cnty.*, 927 F.2d 1473 (9th Cir. 1991), *superceded by statute on other grounds* (recognizing that Washington sheriff possessed final authority with

respect to training its officers on the constitutional limits of force);
*Pembaur*, 475 U.S. at 483 n.12 ("[S]imilar decisions with respect to law
enforcement practices, over which the Sheriff is the official
policymaker, would give rise to municipal liability."). However, Chief
Oules' failure to train the officers in this regard does not constitute
"deliberate indifference" because at the time of the stop a reasonable
officer would not have understood that such a stop lacked probable cause.
*Cf. Canton v. Harris*, 489 U.S. 392 ("[C]ity's failure to train reflects
deliberate indifference to the constitutional rights of its
inhabitants"). Accordingly, the City's motion is **granted in part**, and
Plaintiff's motion is **denied in part**.

　　　　4.　　<u>State-Law Claims</u>

　　　The City asks the Court to remand Plaintiff's remaining state-law
claims: negligent hiring and supervision, malicious prosecution,
negligent infliction of emotional distress, and tort of outrage to the
state court. Because some of Plaintiff's § 1983 claims survive summary
judgment, the Court **denies** the City's request to remand the state-law
claims.

　　　　5.　　<u>Summary</u>

　　　Plaintiff's Motion for Partial Summary Judgment Against the City of
Brewster: Lack of Probable Cause (ECF No. 153) is **denied**: 1) there is a
triable issue of fact as to whether the City had a longstanding practice
or custom of unlawfully stopping drivers for corner cutting, 2) Chief
Oules did not possess final authority to establish municipal policy with
respect to establishing whether cutting corners was a traffic offense,
or whether police conduct constituted race discrimination, and 3) any

alleged failure by Chief Oules to adequately train his officers did not constitute deliberate indifference. The City's Motion for Summary Judgment (ECF No. 141) is **granted in part** (Plaintiff's punitive-damages request is dismissed, Plaintiff's claims relating to citizen-complaint investigations and deviation from use-of-force policies are dismissed, and municipal liability is not based on the second basis (as it relates to treatment of Latinos) or the third basis) **and denied in part** (there is a triable issue of fact as to whether the City had a longstanding practice or custom of unlawfully stopping drivers for corner cutting, and the state law claims are not remanded).

**D.    Defendants Chief Oules and Officer Rieb's Motion for Partial Summary Judgment**

Defendants Chief Oules and Officer Rieb seek summary judgment in their favor on Plaintiff's Fourth Cause of Action, alleging that her Fourteenth Amendment equal-protection right was violated by Chief Oules' race-based stop, because 1) there is no overt discriminatory policy, and 2) no evidence of discriminatory motive.[7]    Plaintiff contends she has presented sufficient statistical and expert evidence to establish triable issues of fact.

---

[7]    In response, Plaintiff concedes that she does not have sufficient evidence to maintain her gender-based arguments in support of this cause of action, and also agrees, given the Ninth Circuit's qualified-immunity rulings, that this cause of action is pursued only under the Fourteenth Amendment, not the Fourth Amendment. Accordingly, Defendants' motion is **granted in part**.

ORDER ~ 17

A plaintiff pursuing a § 1983 equal-protection claim must 1) be a member of a protected class, 2) present sufficient evidence of "different treatment of similarly situated people" who are members of an unprotected class, and 3) establish that the discrimination was "purposeful," i.e., the action was motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 470 (1996); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).

Although it is undisputed that Plaintiff, as a Mexican-American, satisfies the first prong, the Court finds Plaintiff failed to present evidence to establish a triable issue of fact as to the other elements. First, Plaintiff's evidence that she was treated differently than similarly-situated white drivers is not sufficient evidence. Plaintiff only identifies two other situations in which Chief Oules pulled over white drivers at the same intersection. Such a small number does not allow this Court to sufficiently assess whether Chief Oules' decisions under the circumstances was due to the driver's race or other lawful considerations. *See Armstrong*, 517 U.S. at 470 (finding that study showing that black and non-black drivers were treated differently was not sufficient evidence); *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (dismissing § 1983 equal-protection claim because plaintiffs did not offer evidence that deputy sheriff does not stop non-African Americans under similar traffic circumstances); *Chavez*, 251 F.3d at 634 (finding plaintiff's traffic-stop statistics unreliable because they failed to compare the number of white drivers to Hispanic drivers and then compare that number to those drivers who were stopped and either

given simply a warning or issued a citation); *Wingfield v. United Techs. Corp.*, 678 F. Supp. 973, 980-81 (D. Conn. 1988) (finding the statistics provided by plaintiff regarding the employees "age-based" practices to be insufficient to survive summary judgment).  Further, although Plaintiff offers evidence that Latinos were given a higher number of citations for cutting corners than non-Latinos, e.g., 93.8 percent of the sixteen citations were issued to Spanish-surnamed drivers, this evidence is unreliable because 1) there is no evidence provided as to the racial composition of the drivers in the Brewster area, and 2) the assessment of whether a driver was Latino was simply based on the name.  An individual's name is insufficient by itself to identify the individual's race.  For instance, a white woman could be married to a Latino male and then take his "Latino" last name.  *See United States v. Esparsen*, 930 F.2d 1461, 1466-67 (10th Cir. 1991) (discussing that resting race determinations on surnames or appearances is not always reliable).

Second, although the Court concludes that a question of fact exists as to whether Chief Oules observed Ms. Solis' race before initiating the traffic stop given Mr. Burwell's expert opinion, the Court determines that Plaintiff's evidence relating to the last prong—discriminatory purpose—is insufficient to survive summary judgment.  There is simply insufficient evidence that Chief Oules' stop of Ms. Solis' van and subsequent treatment of Ms. Solis were motivated by her race.  *See Whren v. United States*, 517 U.S. 806, 813 ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race.").  The 2004 report relating to the Brewster Police Department's handling of cases and treatment of minorities is insufficient to support an inference

that Chief Oules' decision to stop Ms. Solis two years later for cutting a corner was motivated by her race. *Cf. Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003) (remanding to district court to determine whether a third-party investigation into the police force's racial incidents was sufficient to establish deliberate indifference or an official custom).

Accordingly, Chief Oules and Officer Rieb's motion is **granted**: Plaintiff's fourth cause of action is dismissed.

**E.    Plaintiff's Motion for Partial Summary Judgment on Malicious Prosecution Claim**

Plaintiff asks the Court to find, as a matter of law, that she establishes two of the elements for both her state-law and § 1983 malicious-prosecution claims: 1) initiation of a criminal prosecution and 2) termination of prosecution in her favor.[8]  Defendants oppose the motion, contending that 1) Plaintiff did not allege a § 1983 malicious-prosecution claim, and 2) the Court previously determined that triable issues of fact exist as to whether Chief Oules' and Officer Rieb's police reports contain omissions or misrepresentations that thereby preclude Prosecutor Sloan from exercising his independent prosecutorial discretion.

///

---

[8]  Plaintiff is not asking the Court to address the other malicious-prosecution elements: malice, lack of probable cause, or damages. Although Plaintiff initially asked the Court to address the probable-cause element, she withdrew this request in her reply.

1.   <u>Asserted Claims</u>

The City contends that the Complaint did not allege a § 1983 malicious-prosecution claim.   The Complaint did not specify whether Plaintiff was bringing her malicious-prosecution claim under state law or § 1983.   However, given that the Complaint relied both on § 1983 and state law, the Court determines that Defendants had sufficient notice that Plaintiff was pursuing her malicious-prosecution claim under both federal and state law.

2.   <u>Immunity</u>

Defendants argue that Chief Oules and the City are entitled to qualified immunity on to the § 1983 malicious-prosecution claim.   The Court disagrees.   First, a municipality is not entitled to assert a qualified-immunity defense to a § 1983 action.   *See Owens v. City of Independence, Mo.*, 445 U.S. 622 (1980).   Second, the Ninth Circuit only addressed Chief Oules' qualified immunity relating to Ms. Solis' § 1983 Fourth Amendment wrongful-seizure claim, finding a reasonable officer would not have known it was unlawful to stop Ms. Solis for cutting a corner.   Neither the Ninth Circuit nor this Court have previously addressed whether Chief Oules maliciously prosecuted Ms. Solis for resisting arrest and assault.

Accordingly, at this juncture, the Court denies Chief Oules and Officer Riebs' qualified immunity as to the malicious-prosecution claim. Triable issues of fact exist as to what occurred during the traffic stop. If the jury determines the facts as Plaintiff suggests, then no reasonable officer in Chief Oules' or Officer Riebs' position would have

prepared the reports as they did, and these Defendants would not be entitled to qualified immunity.

   3.   <u>Elements</u>

   Under Washington law, to succeed on a malicious-prosecution claim arising from a criminal action, the plaintiff must establish 1) the prosecution was instituted or continued by the defendant(s), 2) probable cause that the plaintiff committed the offense was lacking, 3) the prosecution was instituted or continued through malice,[9] 4) the prosecution was abandoned or terminated on the merits in the plaintiff's favor, and 5) the plaintiff suffered injury as a result of the prosecution. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558 (1993). Likewise, a plaintiff alleging a § 1983 malicious-prosecution claim must establish these elements, as well as show that the defendant prosecuted the plaintiff for the purpose of denying a constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Here, Plaintiff only asks the Court to find, as a matter of law, that Defendants initiated the prosecution and that the criminal prosecution concluded in her favor.

///

///

//

/

---

   [9]   "Malice" means personal hatred or ill will, any improper or sinister purpose, or any reckless disregard of the rights of the person. *Dever v. Fowler*, 63 Wn. App. 35, 40 (1991).

ORDER ~ 22

1          a.   *Underlying criminal prosecution concluded in Ms. Solis'*
2  *favor*

3      Defendants do not dispute that the misdemeanor charges and the
4  felony-assault charge concluded in her favor.  Accordingly, Plaintiff's
5  motion is **granted in part.**

6          b.   *Defendants' conduct instituted the criminal prosecution*
7      A malicious-prosecution action is not limited to prosecutors, but
8  may be brought against other persons "who wrongfully caused the charges
9  to be filed [or continued]."  *Awabdy*, 368 F.3d at 1066.  However, there
10 is a presumption of prosecutorial independence that often protects non-
11 prosecutorial officials from a malicious-prosecution action.  But this
12 prosecutorial-independence presumption is rebutted if there is evidence
13 that the official "improperly exerted pressure on the prosecutor,
14 knowingly provided misinformation to him, concealed exculpatory evidence,
15 or otherwise engaged in wrongful or bad faith conduct that was actively
16 instrumental in causing the initiation of legal proceedings."  *Awabdy*,
17 368 F.3d at 1067 (listing cases wherein the plaintiff rebutted the
18 prosecutorial-independence presumption); *Blankenhorn v. City of Orange*,
19 485 F.3d 463, 482 (9th Cir. 2007) (allowing plaintiff's § 1983 malicious-
20 prosecution claim to survive in part because plaintiff presented evidence
21 that officers included false statements in their arrest reports upon
22 which the prosecutor relied).

23     Defendants contend a triable issue of fact exists as to whether
24 Prosecutor Sloan's probable-cause determination establishes prosecutorial
25 independence that cuts off any liability on their behalf.  The Court
26 agrees.  The jury will determine whether Plaintiff has rebutted the

ORDER ~ 23

prosecutorial-independence presumption by showing, amongst other evidence, that 1) Prosecutor Sloan solely relied upon Chief Oules' Report that possibly contained material omissions and misrepresentations regarding Ms. Solis' conduct when making his charging decision, 2) Prosecutor Sloan continued to rely upon Chief Oules' Report during the criminal pretrial and trial, and 3) Prosecutor Sloan did not withdraw his charging decision after receiving Officer Rieb's report that also possibly contained material omissions and misrepresentations. The jury can consider this evidence under the totality of the circumstances to determine whether Chief Oules and Officer Rieb knowingly provided misinformation to and/or concealed exculpatory evidence from Prosecutor Sloan that was instrumental in initiating or maintaining the criminal prosecution. Accordingly, Plaintiff's motion is **denied in part**.

4.   Conclusion

The Court **grants and denies** Plaintiff's motion **in part:** the underlying criminal prosecution was concluded in Ms. Solis' favor, while triable issues of fact exist as to whether Defendants' conduct instituted or continued the criminal prosecution.

**F.   Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED**:

1.   Defendants Chief Oules and Officer Riebs' Motion to Strike **(ECF No. 171)** is **DENIED**.

2.   The City's Motion for Summary Judgment **(ECF No. 141)** is **GRANTED** (punitive-damages request; claims relating to investigating citizen complaints and deviating from use-of-force policy; first municipal-policy-liability basis; second municipal-policy-liability basis as it

relates to treatment of Latinos; and third municipal-policy-liability basis) **and DENIED** (triable issue of fact as to second municipal-policy-liability base as it relates to stopping drivers for cutting corners; and remanding state-law claims) **IN PART.**

    3.    Defendants Chief Oules and Officer Riebs' Motion for Partial Summary Judgment Re: Plaintiff's Fourth Cause of Action **(ECF No. 146)** is **GRANTED.**

    4.    Plaintiff's Motion for Partial Summary Judgment on Malicious Prosecution Claim **(ECF No. 149)** is **GRANTED and DENIED IN PART.**

    5.    Plaintiff's Motion for Partial Summary Judgment Against the City of Brewster: Lack of Probable Cause **(ECF No. 153)** is **DENIED.**

    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

    **DATED** this ___9th___ day of March 2011.


                          _____
                             S/ Edward F. Shea
                             EDWARD F. SHEA
                  United States District Judge

Q:\Civil\2008\0021.xmsjs.wpd